RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 6/5/12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| TARIQ A. VAUGHN, SR. | DOCKET NO. 11-CV-923; SEC. P |
| VERSUS | JUDGE DEE D. DRELL |
| HARVEY LAPIN, ET AL. | MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION

Before the Court is the *pro se* civil rights complaint of Plaintiff Tariq A. Vaughn, Sr., filed pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics[1]. Plaintiff is an inmate in the custody of the United States Bureau of Prisons, and he is incarcerated at the United States Penitentiary (USP) in Lewisburg, Pennsylvania. He complains that his constitutional rights were violated by the defendants while he was housed at USP-Pollock. He names as defendants Harvey G. Lapin, Warden Keffer, Captain Wingo, Lieutenant Humphrey, Lieutenant Jones, Dr. Hughes-Albert, Correctional Officer Rhodes, and Correctional Officer Bordelone.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

---

[1] In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C.A. § 1983.

## Statement of the Case

Plaintiff alleges that, on Friday, September 25, 2009, he was informed that he would be receiving a cell mate. Plaintiff told Lieutenant Jackson that he did not want to be housed with a Muslim inmate. Jackson referred Plaintiff to the Unit Team leader. Plaintiff then talked to Defendant Carter and explained that there was tension between Muslim inmates and another group of inmates with whom Plaintiff was friendly. Carter notified Defendant Lewis.

The inmate that was brought to Plaintiff's cell was a Muslim. Plaintiff informed Officer Rhodes that he "didn't cell with Muslims and had documentation (BP-8) of this." Officer Rhodes left Plaintiff's cell with the Muslim inmate and returned with Lieutenant Jones. Jones informed Plaintiff that there was nothing in Plaintiff's central inmate monitor file indicating that he could not be housed with Muslim inmates. [Doc. #5, p.5] Jones instructed Plaintiff that he take the cell mate or receive an incident report.

On Sunday, September 27, 2009, as Plaintiff was sitting on the toilet and reading, his cell mate "jumped out of his bed" and proceeded to stab Plaintiff in his head and back. [Doc. #5, p.5] Plaintiff was taken to the infirmary for treatment, including medical staples.

Ultimately, Plaintiff was returned to his cell. The next day, Plaintiff was informed by Officer Bordelon that Plaintiff was being moved to another cell with a new cell mate. Plaintiff informed the

officer that he would only feel safe if he was with one of only three inmates at the facility. Those inmates already had cell mates. Plaintiff refused to go to the new cell and "chose to be placed on suicide watch." [Doc. #5, p.6] Plaintiff complains that he received only water, bread, and cold cuts while on suicide watch. He stayed on suicide watch until Friday October 9, 2009.

## Law and Analysis

1. **Prescription**

There is no federal statute of limitations. Accordingly, the forum state's statute of limitations for general personal injuries is used in Bivens claims. Lopez-Vences v. Payne, 74 Fed. Appx. 398 (5th Cir. 2003). In Louisiana, that limitations period is one year. However, federal law is used to determine when a cause of action accrues. Id. "Under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." Piotrowski, 51 F.3d at 516, quoting Vigman v. Community National Bank and Trust Co., 635 F.2d 455, 459 (5th Cir. 1981). Any claim arising out of Plaintiff's attack accrued on the date of the attack, September 27, 2009. Thus, the statute of limitations expired on Plaintiff's claim on September 27, 2010. Plaintiff did not file the instant suit until June 17, 2011.

Plaintiff would be entitled to equitable tolling for the time

spent exhausting the BOP administrative remedies. See Clifford v. Gibbs, 298 F.3d 328, 333 (5th Cir. 2002). However, it is unclear whether Plaintiff properly exhausted his claims. In his original complaint, he claims that the Prison Litigation Reform Act (PLRA) "held" that prisoners are not required to exhaust administrative remedies in lawsuits where the circumstances are "egregious". Thus, it appears that Petitioner failed to fully exhaust his administrative remedies. He has not provided the court with a copy of a response from the national administrator ultimately denying his grievance. Thus, it is likely that Petitioner's claim is time barred. However, even if he was entitled to equitable tolling, his claim fails for the reasons that follow.

2. **Failure to Protect**

"It is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates." Longoria v. Texas, 473 F.3d 586, 592 (5th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 832-33 (1994)). This duty, which is grounded in the Eighth Amendment's prohibition against "cruel and unusual punishments," is nevertheless a limited one. See Farmer, 511 U.S. at 832-34. To state a claim for failure to protect, an inmate must allege that (1) he was "incarcerated under conditions posing a substantial risk of serious harm," and that (2) a prison official was "deliberately indifferent" to this risk. Id. at 834.

4

A prison official is "deliberately indifferent" to a risk when he "knows of and disregards an excessive risk to inmate health or safety." <u>Id.</u> at 837. To "know of" a risk, an official must be "subjectively aware" of the risk: that is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837; <u>see also</u> <u>Adames v. Perez</u>, 331 F.3d 508, 512 (5th Cir. 2003). Finally, even if a prison official was subjectively aware of the risk, he may be found free from liability if he "responded reasonably to the risk, even if the harm ultimately was not averted." <u>Farmer</u>, 511 U.S. at 844.

Plaintiff claims that on September 25, 2009, he told Defendant Jones and/or Rhodes "about his apprehension of being housed in the same cell with a Muslim." [Doc. #1, p.8] These defendants evidently checked Plaintiff's central inmate monitor file, but there was no indication that sharing a cell with a Muslim inmate presented a danger or threat to Plaintiff's safety. [Doc. #5, p.5] Plaintiff claims that at some point in time, he had submitted a BP-8 indicating that he did not want to be housed with Muslims [Doc. #1, p.4], and that in June of 2009, "there was tension between Muslim inmates and another group of inmates that Plaintiff was friendly with" [Doc. #10, p.8]. Petitioner did not provide a copy of a BP-8, nor did he make any other complaints to the defendants regarding his relationship with Muslim inmates.

Likewise, Plaintiff has not stated a claim against Lieutenant Jackson. When Plaintiff told Jackson that he did not want to be housed with a Muslim inmate, Jackson referred Plaintiff to the Unit Team leader. Plaintiff only makes a conclusory allegation that Jackson was involved in some sort of conspiracy against him. There are no allegations of deliberate indifference against Lt. Jackson.

When Plaintiff allegedly informed Defendant Carter that there was tension between Muslim inmates and Plaintiff's friends, Carter notified his supervisor, Defendant Lewis. There are no factual allegations that Carter acted with deliberate indifference to Plaintiff's safety.

There are insufficient factual allegations that Plaintiff faced a substantial risk of serious harm from any Muslim inmate that was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past. See Farmer, 511 U.S. at 842.

3. **Supervisor Liability**

Plaintiff complains that Harvey Lapin is liable as overseer of all employees under the Bureau of Prisons, and Keffer and Wingo are liable as the "supervisors of the Defendants that were directly involved in violating the Plaintiffs rights." [Doc. #9, p.7] Defendants Jones and Humphrey are liable as "direct supervisors of Defendants Bordeloen [sic] and Rhodes who are the most culpable this action."

6

Under Section 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. <u>Oliver v. Scott</u>, 276 F.3d 736, 742 (5th Cir. 2002). A supervisor may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations or (ii) they implement unconstitutional policies that causally result in Plaintiff's injuries. See <u>Mouille v. City of Live Oak, Tex.</u>, 977 F.2d 924, 929 (5th Cir. 1992), *cert. denied,* 508 U.S. 951 (1993). Plaintiff's only claims against Lapin, Keffer, and Wingo are as supervisors of the other defendants. There are no allegations of personal involvement by those defendants, or that they implemented an unconstitutional policy.

Plaintiff claims that Humphrey is liable as supervisor of Bordelon and Rhodes. Plaintiff also claims that, after the attack, Humphrey threatened to write Plaintiff up if he refused to go into his assigned cell. Neither of these allegations states a constitutional claim against Humphrey. Plaintiff's claim that Humphrey was part of a grand conspiracy to violate Plaintiff's rights is conclusory and unsupported by factual allegations.

Plaintiff's claims against Defendants Humphrey, Lapin, Keffer, and Wingo should be dismissed.

4. **Time in Suicide Cell**

Plaintiff's complaints regarding his time in the special housing unit are without merit, as well. After the attack,

Plaintiff refused to be cellmates with *any* inmate other than two or three particular prisoners. An inmate has no constitutional right to a particular housing assignment. See <u>Yates v. Stalder</u>, 217 F.3d 332, 334 (5th Cir. 2000). Plaintiff chose to go on "suicide watch" rather than accept his housing assignment. Plaintiff complains that while on suicide watch, he was subjected to the conditions of the "suicide watch cell" even though the Defendant's "knew" he was not suicidal. Plaintiff admits that he received water, lunch meat, and bread while in this cell. He does not allege conditions presenting an atypical and significant hardship in relation to the ordinary incidents of prison life. See <u>Sandin v. Conner</u>, 515 U.S. 472 (1995).

### *Conclusion*

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous because it is prescribed on it's face, and alternatively for failing to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

8

Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglas v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

Thus done and signed at Alexandria, Louisiana, this 5th day of June, 2012

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE